IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| BRIAN S. SINGER, <br><br> Plaintiff <br><br> v. <br><br> SGT. MICHAEL COONEY, SGT. MATTHEW SCHALLER, OFFICER JASON JANKOWSKI, OFF. ABRAHAM AICH, all in their individual and official capacities; CHICAGO POLICE DEPARTMENT; FORMER CHICAGO POLICE SUPERINTENDENT EDDIE JOHNSON, in his official capacity; CITY OF CHICAGO; ST. BERNARD'S HOSPITAL, <br><br> Defendants. | No. 19-CV-135 <br><br> Judge Martha M. Pacold <br><br><br><br><br><br> **JURY TRIAL DEMANDED** |

## SECOND AMENDED COMPLAINT

Brian Singer complains that named Chicago Police officers used unlawful excessive force in violation of the Fourteenth Amendment of the U.S. Constitution and 42 U.S.C. § 1983 by tripping and beating him, as part of part of an unlawful policy or practice of constitutional violations, and in so doing willfully and wantonly committed tortious battery in violation of the law of Illinois, and that St. Bernard's Hospital committed unlawful restraint and tortious battery by putting him in full body restraints and repeatedly injecting him with Ativan, Haldol, Propofol, and Versed without his consent, and over his objection.

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this action under 42 U.S.C. § 1983 and the Fourteenth Amendment, and has supplemental jurisdiction for state law tort claims under 28 U.S.C. § 1367 because the complained of conduct arises from a common factual nexus. Venue in this District is

1

proper, because all or a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Illinois. 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

2. Brian Singer is a resident of Chicago, Illinois.

3. Sgts. Michael Cooney and Matthew Schaller are Chicago Police officers, as are Officer Jason Jankowski and Abraham Aich, all of whom work for the Chicago Police Department. (CPD) Their ultimate supervisor was Chicago Police Superintendent Eddie Johnson, head of CPD (collectively, Police Defendants).

4. St. Bernard's Hospital is a medical facility located at 326 W. 64th St., Chicago, IL 60621

5. On Oct. 9, 2016 at 12.30 p.m., Singer was arrested at his home when police from the 18th District responded to a call about an alleged unlawful detention. He was kept for two hours in a police car while police investigated.

6. Singer's toe was bleeding from a serious gash caused by an earlier home accident.

7. Police then transported Singer to 18th District around 3 or 4 p.m. After about twelve hours, police at the 18th District determined that there was no probable cause for arrest and further detention, and then mutually consented to taking Singer to Mercy Hospital to treat his toe. He was at Mercy for about two hours.

8. When Singer was released by Mercy Hospital medical staff, around 5. a.m., on Oct. 10, Off. Jankowski and another officer seized him and took him to the 2d District in a black unmarked sedan.

9. At the 2d District, police put Singer in a holding cell. He was kept there for about twelve hours. He demanded to be released because, he said, his 48 hours were up.

10.     Singer was released and was walking out of the station, maybe ten feet from the doors. Sgt. Cooney stopped him, saying, "We have to ask you some more questions." Singer protested, but Sgt. Schaller put him in hand restraints and leg irons. He did not resist in any way.

11.     Cooney and Schaller walked Singer from the front desk, through a dividing gate, and down a hall into a larger space. Offs. Jankowski and Aich joined them.

12.     Schaller tripped Singer, and when he fell, the defendant officers started punching and kicking him all over his body. The beating continued for at least a minute. Singer was injured on his head, neck, torso, arms, back, legs, buttocks, and private parts.

13.     The justification police later gave for this was that Singer "did not follow verbal direction," "stiffened (dead weight)," and "pulled away." This was entirely false. Singer was cooperative and nonresistant until he was tripped, kicked, and beaten.

14.     Abraham Aich has six excessive force complaints, one sustained. Jason Janowski has 25 complaints of excessive force, three sustained. Matthew Schaller has 27 complaints of excessive force, none sustained. Michael Cooney has 10 complaints of excessive force, one sustained.

15.     In its *Investigation of the Chicago Police Department* (Jan 13, 2017), the Department of Justice found that **"CPD engages in a pattern or practice of force in violation of the Constitution [….,] based on a comprehensive investigation of CPD's force practices and a close analysis of hundreds of individual force incidents**."

16.     In an effort to stop the assault, Singer demanded to be taken to the hospital.

17.     Off.  Janowski drove him to St. Bernard's Hospital. He was admitted at 4.12 a.m. on Oct. 11, 2016. The police told the hospital he was probably a mental patient, and they had discovered him in the station in a delusional state, threatening to harm himself and others, talking to an imaginary person named Amy and an imaginary dog called Royal, asking for his phone and

personal effects. This was untrue. Singer had not seen a therapist until after, when he had to see one to deal with the PTSD and other effects of the beating. The police reported that Singer had somehow bitten a Detention Aid named Gibson on the upper right leg. This was also untrue, and in fact, impossible.

18. Singer was put into full body restraints on a stretcher. He was not allowed to explain the trauma he had endured at the hands of the CPD. Over repeated protest, and without his consent, he was given three rounds of injections of Haldol, and Ativan. After the second round he began to hallucinate. St Bernard's then added Propofol and Versed injections and IV drips. Singer lost consciousness and went into respiratory failure as a result of the drugs with which he had been involuntarily injected. He woke up intubated and on a catheter. He demanded to be immediately discharged and, was released against medical advice on 8.30 p.m. on Oct. 13th, 2020.

19. Despite repeated requests, it took nine months for Singer to obtain the falsified report about the supposed resistance in the police station, and police use of force, with the untruth about biting the Detention Aide, after police produced only a report ending with his being released from the 2d District, with repeated statements that that is all there was.

20. Singer suffered severe physical and psychological effects from the beating and the involuntary injections, including pain and suffering, trauma, PTSD, anxiety, and depression, and has required psychological treatment for his injuries.

## LEGAL PRINCIPLES AND CLAIMS

### COUNT I.

21. Singer here incorporates by reference ¶¶ 1-19.

22. The Police Defendants violated Section 1983 and the due process clause of the Fourteenth Amendment to the United States Constitution by tripping, beating, and kicking Singer

4

(¶ 12 above) while he was in handcuffs and leg irons, cooperative, and unresisting (¶¶ 10, 13). Any reasonable officer would have known that such conduct was illegal.

23. Even if Singer had behaved as the Police Defendants allege, that is, that he "did not follow verbal direction," "stiffened (dead weight)," and "pulled away" (¶ 13) which he did not, tripping him, kicking, and beating him for a minute was grossly and unconstitutionally excessive, and any reasonable officer would have known this.

24. Especially if Singer was delusional and disoriented as falsely described by the Police Defendants (¶ 17, above), tripping him, kicking, and beating him for a minute was grossly and unconstitutionally excessive, and any reasonable officer would have known this.

25. The Chicago Police Department has a policy or practice of excessive force (¶ 15), as do the individual police Defendants. (¶ 14). The then-Police Superintendent ratified and sanctioned these policies and practices.

## COUNT II

26. Singer here incorporates by reference ¶¶ 1-25.

27. The Police Defendants willfully and wantonly committed tortious battery on Singer tripping, beating, and kicking Singer (¶ 12 above) while he was in handcuffs and leg irons, cooperative, and unresisting (¶¶ 10, 13). Their conduct would have been unjustified by the resistance falsely attributed to him (¶13), and entirely uncalled for if Singer had been delusional and disoriented as falsely described by the Police Defendants (¶ 17).

## COUNT III

28. Singer here incorporates by reference ¶¶ 1-27.

29. St. Bernard's Hospital committed battery on Singer by putting him in full body restraints and repeatedly injecting him with Haldol, Propofol, Versed, and Ativan, causing

unconsciousness and respiratory failure. Even if they initially believed him to be disoriented and delusional, on the false representation of the Police Defendants, they had a duty to determine for themselves whether he was coherent, and need and would consent to injections with life-threatening side effects.

## PRAYER FOR RELIEF

30. Plaintiff demands:

31. $2.5 million in compensatory damages from the Police Defendants for physical injury, pain and suffering, noneconomic damages, battery, and violation of his constitutional rights.

32. $2.5 million in punitive damages from the Police Defendants for battery and violation of his constitutional rights.

33. $250,000 in compensatory damages from St. Bernard's Hospital for physical injury, pain and suffering, noneconomic damages, and battery.

34. $250,000 from St. Bernard's Hospital for punitive damages for battery,

35. and such other relief as this honorable Court deems just and necessary.

## ATTORNEYS AND EXPERT'S FEES

36. Plaintiff requests that reasonable attorneys and experts' fees and costs be paid by the defendants, under 42 U.S.C. 1988 (b) & (c) if he is the prevailing party.

| Aug. 6, 2020 | ss/ *Justin Schwartz* <br> Justin Schwartz <br> Counsel for Brian Singer, Plaintiff <br> ARDC No. 6257328 <br> 1723 W. Devon Ave #607882 <br> Chicago, IL 60660 <br> 847-687-5477 <br> justinschwartzlaw@gmail.com |
|---|---|